IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LOUIS FROBE, ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 11 CV 1722 |
| The VILLAGE OF LINDENHURST, a ) | |
| municipal corporation, Lindenhurst Police ) | |
| officers RALPH H.GOAR, JOHN E. MARS, ) | Judge |
| and JOHN F. FISHER, Lake County State's ) | |
| Attorney MICHAEL J. WALLER, and Illinois) | Magistrate Judge |
| Attorney General LISA MADIGAN, ) | |
| ) | |
|         Defendants. ) | |

## COMPLAINT

Plaintiff, LOUIS FROBE, by and through his attorneys, The Hamilton Law Office, LLC, makes the following complaint against Defendants the VILLAGE OF LINDENHURST, ("Defendant Village"), Defendant Police Officers, RALPH H. GOAR, JOHN E. MARS and JOHN F. FISHER ("Defendant Officers"), Defendant Lake County Prosecutor MICHAEL J. WALLER, and Defendant Attorney General LISA MADIGAN:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution as well as under Illinois common law.

2. This action also challenges the constitutionality of the Illinois Eavesdropping Act, 720 ILCS 5/14 ("the Act"), as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful. This application of the Act violates the First Amendment to the U.S.

Constitution. Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. §1983 and 28 U.S.C. § 2201 *et seq*.

3. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

4. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

5. Plaintiff is a forty-seven-year-old disabled resident of Lake Villa, Illinois.

6. Defendant Officers, at all relevant times, are or were Lindenhurst police officers, employed by Defendant Village, acting within the scope of their employment, and under color of law.

7. Defendant Village is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times, is or was the employer and principal of Defendant Officers.

8. Defendant Lake County State's Attorney MICHAEL WALLER, is the duly elected prosecutor in Lake County, Illinois, responsible for the oversight of all criminal prosecutions, and empowered to prosecute and thereby enforce all laws in Lake County, Illinois, including the Eavesdropping Act. Defendant WALLER is sued solely in his official capacity for purposes of declaratory and injunctive relief.

9. Defendant Attorney General LISA MADIGAN is a duly elected public official of the State of Illinois, and he chief legal officer for the State of Illinois. Defendant MADIGAN is sued solely in her official capacity for purposes of declaratory and injunctive relief.

## FACTS

### The Illinois Eavesdropping Statute

10. The current version of the Illinois Eavesdropping Act criminalizes the use of a machine to record certain conversations – even if the conversations are not private. Specifically:

2

(a) The Act provides that "[a] person commits eavesdropping when he. . . [k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation . . . unless he does so . . . with the consent of all of the parties to such conversation . . . ." 720 ILCS 5/14-2(a)(1)(A).

(b) The Act defines "conversation" to mean "any oral communication between 2 or more persons *regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation*." 720 ILCS 5/14-1(d) (emphasis added).

(c) The Act defines "eavesdropping device" to include "any device capable of being used to hear or record oral conversation . . . ." 720 ILCS 5/14-1(a).

(d) The Act provides that a first offense of eavesdropping is a Class 4 felony, 720 ILCS 5/14-4(a), which is punishable by a sentence of imprisonment of one to three years, 730 ILCS 5/5-4.5-45.

11. The Illinois Eavesdropping Act did not originally criminalize public conversations, only private ones. The legislative purpose of the subsequent extension of the Act was specifically intended to criminalize civilian audio recordings of police officers performing their public duties in public places.

(a) In 1986, in *People v. Beardsley*, 115 Ill. 2d 47 (Ill. 1986), the Illinois Supreme Court held that an element of the criminal offense created by the then- existing version of the Act was "circumstances which entitle [the parties to a conversation] to believe that the conversation is *private* and cannot be heard by others who are acting in a lawful manner." 115 Ill. 2d at 53 (emphasis added). The *Beardsley* case involved a motorist who audio recorded a police officer during a traffic stop. *Id.* at 48-49. The Court held that this

3

       motorist did not violate the Act, because the conversation was not private.

   (b) Eight years later, in 1994, Illinois amended the Act with Public Act 88-677, also known as House Bill 356. This new law adopted the current definition of "conversation," to wit: "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation."

   (c) On May 19, 1994, during Senate floor debate regarding this bill, the Senate sponsor stated that the bill had earlier passed out of that chamber "to reverse the *Beardsley* eavesdropping case . . . ." *See* Tr. at p. 42.

12.    The current Illinois Eavesdropping Act is abnormal. The federal ban on audio recording certain conversations, and the vast majority of similar state statutes, apply only to private conversations – as the Illinois Eavesdropping Act did, before it was amended in 1994 in reverse the Illinois Supreme Court's *Beardsley* decision. Only a handful of states have extended their eavesdropping statutes to non-private conversations, and most of those states, unlike Illinois, do not extend their prohibitions to open and obvious recording, as opposed to secret recording.

13.    The Illinois Eavesdropping Act allows the police to record citizens, but not the reverse. The Act exempts certain audio recordings *by* law enforcement officials of conversations between law enforcement officials and members of the general public. Examples include:

   (a) Conversations recorded "simultaneously with the use of an in-car video camera" during "traffic stops, pedestrian stops," and similar events. 720 ILCS 5/14-3(h).

   (b) Conversations with a civilian who is "an occupant of a police vehicle." 720 ILCS 5/14-3(h-5).

   (c) Conversations recorded "during the use of a taser or similar weapon or device" if the

4

device is equipped with audio recording technology. 720 ILCS 5/14-3(h-10).

14. The purported legislative purpose of these statutory exemptions are to deter and detect police misconduct, and also to rebut false accusations of police misconduct. Specifically:

(a) In 2009, Illinois amended the Act with Public Act 96-670, also known as House Bill 1057. This new law amended the foregoing exemption regarding police in-car video cameras to its current form, and created the foregoing exemptions (h-5) and (h-10).

(b) On April 2, 2009, during House debate regarding this bill, the House sponsor stated the following about the Bill's legislative purpose:

> When there's audio, then there is no question as to what was said or what wasn't said and if someone is accused of doing something or saying something, this is the proof that they would have as a citizen also, not only for protection of law enforcement, but for the citizens to have the proof in hand as to what actually happened at that particular [moment].

15. Police officers performing their public duties in public places, and speaking at a volume audible to the unassisted human ear, have no reasonable expectation of privacy that the words they speak will not be heard by unintended parties, or recorded, published, and disseminated.

## Background Facts on Plaintiff Frobe

16. For many years, Plaintiff has suffered from chronic pain and physical limitations due to nerve damage and a degenerative disc disease. In order to lead a relatively "normal" life, Plaintiff must take multiple medications every day.

17. As a result of his chronic pain and his medications, Plaintiff he often has trouble sleeping. Over the years, Plaintiff has found nighttime hobbies to pass the time. These hobbies include regular attendance at the late show at the movie theatre, and the observation of nocturnal wildlife in its natural habitat. In pursuit of this hobby, Plaintiff has a collection of visual and auditory technological devices, which aid him in observing nocturnal wildlife.

18. Because Plaintiff is often outside late at night by himself, he has had frequent contact with local police. Because Plaintiff's hobby is unusual, his encounters with local police in Lake County have often been unpleasant.

19. Plaintiff and his wife own their home in Lake Villa, Illinois. Since Plaintiff and his wife moved to Lake Villa, Plaintiff estimates he has been stopped, and questioned by local police approximately forty times.

20. On April 2, 2010, Plaintiff was stopped by the Lake County Sherriff's Department police officers in the woods at night. Not believing that Plaintiff was there to observe the animals, the Lake County Sherriff's police officers interrogated Plaintiff and ultimately searched his vehicle finding his prescription medication in an unlabeled pill bottle. The Lake County Sheriffs charged Plaintiff with possession of a controlled substance for the possession of his prescription medications. These charges were dismissed when Plaintiff presented proof of his prescriptions in court.

**Plaintiff Arrested For Eavesdropping**

21. On August 15, 2010, at approximately 10:30 p.m., Plaintiff was driving his 2004 white Honda CRV westbound on Grand Avenue in the Village of Lindenhurst, on his way see a movie at a local movie theatre.

22. At the same time, Defendant Lindenhurst police officer GOAR was on duty in uniform and driving a marked Lindenhurst Police car. Officer GOAR's squad car was equipped with both audio and video recording devices.

23. Defendant GOAR pulled Plaintiff over on Grand Avenue near the intersection of Grand and Hawkins in Lindenhurst, Illinois.

24. Defendant GOAR conducted a traffic stop of Plaintiff, which was both audio and video

recorded via use of his squad car's on-board recording equipment.

25.     Defendant GOAR approached Plaintiff's vehicle and told him he had been stopped for speeding.

26.     Plaintiff, having had many prior and unfavorable incidents with local police on account of his nocturnal hobby, had recently purchased a video camera specifically to record any encounters he had with police officers and specifically to protect himself from unlawful arrests or other unconstitutional conduct against him by police officers.

27.     Believing Officer GOAR to be incorrect about the posted speed limit, when Officer GOAR returned to his squad car with Plaintiff's driver's license, Plaintiff activated his video camera in an attempt to record the area of the stop so that he could use this video evidence in is own defense against what he believed to be an unlawful traffic citation.

28.     Defendant GOAR, having decided not to give Plaintiff a ticket for speeding, and to instead simply release him with a warning, returned to Plaintiff's vehicle and informed Plaintiff of this decision.

29.     While speaking with Plaintiff, however, Officer GOAR noticed Plaintiff's video camera and asked Plaintiff if it was recording their conversation.

30.     Plaintiff answered Officer GOAR truthfully.

31.     Officer GOAR then ordered Plaintiff out of his vehicle informing him that he was under arrest for the felony offense of Eavesdropping.

### Plaintiff and His Vehicle Searched Pursuant To Eavesdropping Arrest

32.     Officer GOAR placed Plaintiff in handcuffs, searched him, removing everything from his pockets, and ultimately placed him in the back of either his squad car.

33.     At some point after Plaintiff's arrest, Defendant MARS arrived on the scene to assist

Defendant GOAR.

34. Defendant GOAR and MARS then searched Plaintiff's car. During that search, they found and confiscated Plaintiff's prescription medication, his video camera, and several devices Plaintiff uses to observe nocturnal wildlife.

35. On account of Plaintiff's previous arrest by the Lake County Sherriff's Department, Plaintiff had begun carrying the paper copies of his prescriptions together with the medications themselves inside a waist pack that he either wore or carried with him at all times, and where he also kept his driver's license and his wallet. When Plaintiff was arrested by Defendant GOAR, this waist pack was sitting on the front passenger seat of Plaintiff's car.

36. Defendant Officers searched Plaintiff's waist pack, dumping it on the seat and floor of Plaintiff's car, and removing Plaintiff's paper prescriptions. Defendant Officers left Plaintiff's paper prescriptions in his car, and had Plaintiff's car towed from the scene.

37. Defendant Officers took Plaintiff to the Lindenhurst Police Station in handcuffs in the back of a squad car.

38. Plaintiff was brought to room inside the Lindenhurst Police Department. At some point Defendant FISHER and an unknown supervisory officer joined Defendants GOAR and MARS at the Lindenhurst Police Station where the three of them discussed the charges to place against Plaintiff.

39. Defendant Officers contacted the Lake County Prosecutor's office seeking approval for felony Eavesdropping charges against Plaintiff, but they were informed that a decision on that charge would have to wait until the next day.

**Plaintiff Charged and Prosecuted For His Doctor-Prescribed Medications**

40. Defendant Officers then decided to pretend they never saw Plaintiff's paper prescriptions,

8

and charged Plaintiff with the felony offense of possession of a controlled substance -for the possession of his doctor prescribed medications.

41. At approximately 1:00 a.m., Defendant FISHER transported Plaintiff to the Lake County Jail where he remained until he was brought before a judge the next morning.

42. On the morning of August 16, 2010, a judge of the nineteenth judicial circuit, in Lake County Illinois, set Plaintiff's bond at $25,000, and ordered curfew and drug testing conditions on Plaintiff's bond.

43. At 11:30 a.m., on August 16, 2010, after spending the night in jail without his medications, and without being allowed to call his wife, Plaintiff was allowed to post bond for himself and was released from custody.

44. Plaintiff had to hire a criminal defense attorney to defend him against the false felony charges Defendant Officers placed against him.

45. All criminal charges against Plaintiff were ultimately dismissed by the Lake County Prosecutor's office in a manner indicative of Plaintiff's innocence.

### Application of the Act in Illinois & Necessity For Injunctive Relief

46. As intended by the Illinois General Assembly, police officers and prosecutors from several Illinois jurisdictions have also used the Act to arrest and prosecute members of the general public who made audio recordings of police officers performing their public duties in public places and speaking at a volume audible to the unassisted human ear. See for example, *People v. Drew*, No. 10-cr-4601 (Cook County Circuit Ct.), *People v. Thompson*, No 04-cf-1609 (6th Judicial Circuit Ct.), *People v. Allison*, No. 09-cf-50 (2nd Judicial Circuit Ct.) and *People v. Parteet* (16th Judicial Circuit Ct.).

47. As a result of the incident detailed in preceding paragraphs as well as other negative encounters Plaintiff has had with local police departments in Lake County where he lives, Plaintiff

wishes to be able to both audio and video record his frequent encounters with on-duty police officers performing their official duties in public places.

48.     Plaintiff seeks to make these recordings of his encounters with the police in order to create evidence he may use to defend himself against false criminal charges and/or to petition the government for redress of grievances, which arise from of police misconduct.
Plaintiff seeks to deter and detect unlawful police interference with his constitutional liberties.

49.     Given Plaintiff's prior experiences and the various criminal prosecutions currently proceeding in the State of Illinois for violations of the Eavesdropping statute, Plaintiff has a reasonable fear that if he attempts to record his encounters with police he will again be arrested and this time perhaps also prosecuted for violation of the Act.

50.     Plaintiff is thus chilled and deterred by the Act and by the Defendants from undertaking the recording of his encounters with police.

51.     Unless enjoined by this Court, Defendants will continue to arrest and prosecute, pursuant to the Act, people who audio record police officers performing their public duties in public places.

52.     Plaintiff has suffered, and will continue to suffer, irreparable harm as a result of the denial of the opportunity to record his encounters with police.

53.     Plaintiff has no adequate remedy at law other than to bring this lawsuit.

### COUNT I:  §1983 First Amendment Claim

54.     Plaintiff re-alleges paragraphs 1-53 as if fully restated here.

55.     The Act violates the First Amendment to the U.S. Constitution, as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful.

56. Among other things, this application of the Act is unlawful because:

    (a) The Free Speech Clause of the First Amendment protects the right to gather, receive, or record the information at issue in this Complaint.

    (b) The Free Speech Clause and the Petition Clause of the First Amendment protect the right to gather, receive, or record the information at issue herein for purposes of using that information to petition government for redress of grievances.

    (c) The Free Speech Clause and the Free Press Clause of the First Amendment protect the right to gather, receive, or record the information at issue herein for purposes of disseminating and publishing that information to other people.

57. The Illinois Eavesdropping Act exempts audio/video recordings made by police of conversations between police and civilians during traffic stops, in order to protect both the civilians and the officers from false testimony about these conversations. There is no constitutionally valid basis for allowing police to make such audio recordings, while criminalizing the conduct of civilians who do so.

    WHEREFORE, Plaintiff respectfully requests a declaratory judgment holding that the Act violates the First Amendment, as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful, and the entry of a preliminary injunction, and then a permanent injunction, that enjoins Defendants from arresting and/or prosecuting plaintiff under the Act for video and audio recording police officers, without the consent of the officers in the limited circumstances described above. Plaintiff further respectfully requests that this Court award his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and such other and

11

further relief as this Court may deem just and proper.

## COUNT II: §1983 False Arrest Claim

58. Plaintiff re-alleges paragraphs 1-53 as if fully restated here.

59. As more fully described above, Defendant Officers arrested Plaintiff without a warrant, probable cause, or any other legal justification to do so, in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

60. Each Defendant Officer had a reasonable opportunity to intervene to prevent the misconduct of his fellow officers, but failed to do so.

61. As a direct and proximate result of this false arrest, Plaintiff suffered damages, including physical and emotional damages, which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers in a fair and just amount sufficient to compensate Plaintiff for the injuries he has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

## COUNT III: §1983 Unlawful Search Claim

62. Plaintiff re-alleges paragraphs 1-53 as if fully restated here.

63. As more fully described above, Defendant Officers searched Plaintiff and his vehicle without a warrant, probable cause, or any other legal justification to do so, in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

64. Each Defendant Officer had a reasonable opportunity to intervene to prevent the misconduct of his fellow officers, but failed to do so.

65. As a direct and proximate result of this false arrest, Plaintiff suffered damages, including physical and emotional damages, which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers in a fair and just

amount sufficient to compensate Plaintiff for the injuries he has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

## COUNT IV:  §1983 Conspiracy Claim

66.     Plaintiff re-alleges paragraphs 1-65 as if fully re-stated here.

67.     Defendant Officers either impliedly or expressly conspired to violate Plaintiff's constitutional rights as described above.

68.     In furtherance of this conspiracy, Defendant Officers conspired to falsely arrest and prosecute Plaintiff without probable cause, for a crime he did not commit.

69.     As a direct and proximate result of this conspiracy, Plaintiff suffered damages as described more fully above.

WHEREFORE, Plaintiff prays judgment against Defendants in a fair and just amount sufficient to compensate Plaintiff for the injuries he has suffered, plus, a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

## COUNT V:  §1983 *Monell* Policy Claim

70.     Plaintiff  re-alleges paragraphs 1-69 as if fully re-stated here.

71.     The misconduct described in the preceding paragraphs of this complaint was undertaken pursuant to the policy and practice of Defendant Village.

 72.     On information and belief, Defendant Village trains and encourages its officers to arrest citizens such as Plaintiff for recording police officers engaged in their official duties. In this way, Defendant City's express or implied policy or practice resulted in the violation of Plaintiff's rights since it created the opportunity for Defendant Officers to commit the foregoing constitutional violations.

73.     As a direct and proximate result of Defendant Village's policies and practices, Plaintiff has

suffered physical, emotional and economic damages, which will be proven at trial.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant Village in a fair and just amount sufficient to compensate him for the injuries he has suffered, plus costs, reasonable attorneys' fees, and all such other relief as this Court finds just and equitable.

### COUNT VI: Illinois Malicious Prosecution Claim

74. Plaintiff re-alleges paragraphs 1-53 as if fully re-stated here.

75. As more fully described above, Defendant Officers willfully and wantonly initiated criminal proceedings against Plaintiff without probable cause to believe he had committed a crime.

76. With malice, willfulness, and/or reckless indifference to Plaintiff's rights, Defendant Officers created, or acquiesced to, false and/or inaccurate police reports, causing him to be prosecuted for a serious felony offense.

77. In addition, Defendant Officers gave false accounts regarding their investigation to other police officers and/or Assistant State's Attorneys and/or fabricated evidence.

78. The criminal proceedings against Plaintiff were terminated in his favor, in a manner indicative of innocence.

79. As a direct and proximate result of Defendant Officers' malicious prosecution, Plaintiff suffered financial and emotional damages.

80. Illinois law provides that public entities, such as Defendant Village, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

81. At all relevant times, Defendant Officers were agents of Defendant Village, and acting within the scope of their employment as a Lindenhurst Police Officers. Defendant Village, therefore, is liable as principal for all torts committed by Defendant Officers.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers and Defendant Village in an amount reasonable to compensate him for the damages he has suffered, as well as such other relief as is just and equitable.

**Plaintiff demands trial by jury.**

                                    Respectfully Submitted,

By:    /s/ Torreya L. Hamilton
           Attorney For Plaintiff

HAMILTON LAW OFFICE, LLC
11 South LaSalle Street, Suite 1000
Chicago, IL 60603
312.726.3173
312.726.3157 (fax)
tlh@thehamiltonlawoffice.com
Attorney No. 6229397

15