IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS FROBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 11-CV-1722 |
| vs. | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| VILLAGE OF LINDENHURST, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LISA MADIGAN'S MEMORANDUM
IN SUPPORT OF HER MOTION TO DISMISS**

LISA MADIGAN
Attorney General of Illinois

OF COUNSEL:

Michael T. Dierkes
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3000

Counsel for Defendant Madigan

Dated: May 12, 2011

## **INTRODUCTION**

Four months ago, Judge Conlon held that there is no First Amendment right to record police officers. The Illinois Eavesdropping Act ("Act"), 720 ILCS 5/14-1 *et seq.*, prohibits the knowing and intentional use of an eavesdropping device to record a conversation without consent. In *American Civil Liberties Union of Illinois v. Alvarez*, the ACLU challenged the Act's constitutionality, claiming a First Amendment right to audio record police officers performing their public duties in public places. The Court dismissed the claim, noting that the ACLU called for an "unprecedented expansion" of the First Amendment.

This lawsuit fails for the same reason, and also has several other deficiencies that warrant dismissal. Plaintiff Lois Frobe filed this six-count complaint against the Village of Lindenhurst; three Lindenhurst police officers; the Lake County State's Attorney; and the Illinois Attorney General, Lisa Madigan. Plaintiff alleges that he was previously arrested (but not charged) for recording the police during a traffic stop. He has an "unusual hobby," recording nocturnal wildlife in its natural habitat, and alleges that he is frequently approached by the police. He desires to record these late-night encounters so that he can use the recordings, if necessary, to defend himself against "false criminal charges" or publicize any "police misconduct" he experiences.

The only claim against defendant Madigan is Count I, an "as applied" challenge to the constitutionality of the Act, based on plaintiff's purported First Amendment right to record police officers. The claim against Madigan fails and should be dismissed for three separate reasons:

*First*, plaintiff's claim against Madigan is barred by the Eleventh Amendment. Plaintiff does not allege any facts establishing an exception to Madigan's immunity. He says nothing about Madigan except that she is a "public official" and "the chief legal officer of the State of Illinois." He does not allege that Madigan has threatened to prosecute him, or that she has ever prosecuted anybody under the Act. And he offers no facts suggesting that Madigan might take action against him, or anyone else, for a violation of the Act in the future.

*Second*, plaintiff's claim against Madigan should be dismissed for lack of standing. Plaintiff has not alleged a legally cognizable, non-speculative First Amendment injury. The First Amendment protects speech or other expressive conduct, not the mere act of recording. Although plaintiff claims that he might need to publicize the recordings if he is ever falsely charged with a crime or if he ever experiences police misconduct, this type of speculation about potential future law enforcement malfeasance cannot establish standing.

*Third*, plaintiff's claim against Madigan should be dismissed because plaintiff has no First Amendment right to record the police, especially on the facts alleged in his complaint. As noted above, another Court in this district has already dismissed a similar claim brought by the ACLU. And plaintiff's claim is even weaker than the ACLU's, because he wishes to record the police, not from afar, but in one-on-one situations that clearly implicate safety considerations (specifically, traffic stops or encounters with the police late at night). The Seventh Circuit upheld a ban on tape recorders when safety was an issue, the restriction was content-neutral, and other channels of communication were available. This is the case here, and plaintiff's claim fails.

**FACTUAL BACKGROUND**

Plaintiff Louis Frobe resides in Lake Villa, Illinois. (Compl. (Dkt. No. 1) at ¶ 5) He suffers from chronic pain and takes multiple medications each day. (*Id.* at ¶ 16) He has trouble sleeping and has several nighttime hobbies to pass the time, including the "observation of nocturnal wildlife in its natural habitat." (*Id.* at ¶ 17) Because of this "unusual" activity, he has had frequent late-night encounters with the police. (*Id.* at ¶ 18) He estimates that he has been stopped and questioned by the police approximately forty times. (*Id.* at ¶ 19)

Plaintiff details two of these encounters in his complaint. In one case, the Lake County Police stopped plaintiff "in the woods at night." (*Id.* at ¶ 20) The police searched plaintiff's vehicle, found his medication in an unlabelled pill bottle, and charged him with possession of a controlled substance. (*Id.*) The charges were dropped when plaintiff presented proof of his prescriptions in court. (*Id.*) In another case, plaintiff was stopped by the Lindenhurst police for speeding at about 10:30 p.m., and attempted to record his conversation with the officers. (*Id.* at ¶¶ 21, 29-30) Plaintiff was arrested for eavesdropping, but not charged for that crime. (*Id.* at ¶ 31) Instead, he was charged with possession of a controlled substance, allegedly because the officers "decided to pretend they never saw [his] paper prescriptions." (*Id.* at ¶ 40) The charge against plaintiff was ultimately dismissed. (*Id.* at ¶ 45)

Plaintiff wishes to record his encounters with the police, but fears arrest and perhaps prosecution for a violation of the Act. (*Id.* at ¶ 49) Plaintiff seeks to record his encounters with the police for two reasons: (1) "in order to create evidence he may use to defend himself against false criminal charges" and/or (2) "to petition the government for

3

redress of grievances, which arise from police misconduct." (*Id.* at ¶ 48) He alleges that the Act is unconstitutional under the First Amendment, "as applied" to the audio recording of police officers, without their consent, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful. (*Id.* at ¶ 2) Count I of plaintiff's complaint (the only claim against Madigan) is a Section 1983 claim alleging a First Amendment violation and seeking declaratory and injunctive relief. (*Id.* ¶¶ 54-57)

## **ARGUMENT**

This Court should dismiss plaintiff's claim against Madigan (Count I) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I. PLAINTIFF'S CLAIM AGAINST DEFENDANT MADIGAN IS BARRED BY THE ELEVENTH AMENDMENT.**

Plaintiff's claim against Illinois Attorney General Madigan (Count I) fails on Eleventh Amendment grounds and should be dismissed. Plaintiff is suing Madigan only in her official capacity (Compl. at ¶ 9), and the Eleventh Amendment bars claims against state officials acting in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984). In *Ex Parte Young*, the United States Supreme Court recognized an exception for suits seeking to enjoin state officers from enforcing allegedly unconstitutional acts. 209 U.S. 123, 155-57 (1908). But under the exception, the state officer must (1) have "some connection" to the enforcement of the act and (2) "threaten" to enforce the act. *Id.*

4

Here, plaintiff cannot satisfy the second requirement for this exception to Eleventh Amendment immunity.[1] Plaintiff does not allege that Madigan has threatened to prosecute him. To the contrary, plaintiff is silent regarding Madigan's role (if any) in this case. He says *nothing* about Madigan except that she is a "public official" and "the chief legal officer of the State of Illinois." (Compl. at ¶ 9) He does not identify a single instance where Madigan has taken any action in connection with the Act. Nor does he offer any facts even hinting that she might take some action against him, or anyone else, for a violation of the Act in the future.

Instead, plaintiff alleges that the Lake County State's Attorney prosecutes violations of the Act. (*Id.* at ¶ 8) He alleges that Lake County police officers arrested him for a violation of the Act, but does not allege that Madigan had anything to do with his arrest (which did *not* lead to a prosecution for a violation of the Act). (*Id.* at ¶ 31) He alleges that State's Attorneys outside of Lake County have prosecuted a handful of persons for violations of the Act, but does not allege that Madigan had any involvement in any of these cases. (*Id.* at ¶ 46)

In the absence of *any* allegations connecting Madigan to the Act, plaintiff's claim against her must he dismissed. *See, e.g.*, *CSWS, LLC v. Madigan*, 2009 WL 1789368, at *3 (N.D. Ill. Jun. 24, 2009) ("The lack of any recognizable threat of prosecution by Madigan against CSWS…presents a serious Eleventh Amendment problem for CSWS

---

[1] For purposes of this motion only, Madigan assumes that her general authority to enforce Illinois law satisfies the first ("some connection") requirement for the *Ex Parte Young* exception. *See Entertainment Software Ass'n v. Blagojevich*, 469 F.3d 641, 644-45 (7th Cir. 2006). The "threat" requirement is separate and independent. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) ("[T]he phrase 'some connection with the enforcement of the act' does not diminish the requirement that the official threaten and be about to commence proceedings."); *Palmetto Properties, Inc. v. County of DuPage*, 160 F. Supp. 2d 876, 880 (N.D. Ill. 2001) (finding claim against State's Attorney barred by Eleventh Amendment where no prosecution was threatened or pending).

5

under the *Ex Parte Young* exception to Eleventh Amendment immunity in terms of Madigan being named as a defendant.…Madigan's motion to dismiss is thus granted."). The authority to prosecute someone is a necessary "but not sufficient" condition for invoking the *Ex Parte Young* exception to the Eleventh Amendment. *See Palmetto Properties, Inc.*, 160 F. Supp. 2d at 880. Even in the First Amendment context, the theoretical possibility of some action on Madigan's part does not establish an exception to the State's sovereign immunity. *See id.* ("Although the plaintiffs argue that it is enough that [the State's Attorney] is charged with enforcement, they have pointed to no case—in the context of the First Amendment or otherwise—where this has been held sufficient under *Young*."). Plaintiff's claim against Madigan should be dismissed based on the Eleventh Amendment.

## II. PLAINTIFF'S CLAIM AGAINST DEFENDANT MADIGAN SHOULD BE DISMISSED FOR LACK OF STANDING.

Plaintiff's First Amendment claim (Count I) should also be dismissed for lack of standing. Plaintiff bears the burden of establishing standing. *Warth v. Seldin*, 422 U.S. 490, 502 (1975). To establish standing, he must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The alleged injury must be "actual or imminent, not conjectural or hypothetical." *Id.*

Here, plaintiff has no standing because he has not alleged a legally cognizable, non-speculative First Amendment injury. Plaintiff alleges that the Act "chill[s] and deter[s]" him from "undertaking the recording of his encounters with the police." (Compl. at ¶ 50) But by itself, plaintiff's inability to *record* police officers is not a legally cognizable First Amendment injury. The First Amendment protects speech and

6

other "expressive conduct." *Hold Fast Tattoo, LLC v. City of North Chicago*, 580 F. Supp. 2d 656, 659-60 (N.D. Ill. 2008). The mere act of recording does not "convey a particularized message," and therefore is not protected by the First Amendment. *See id.* (holding that the act of tattooing is not protected by the First Amendment because "the act itself is not intended to convey a particularized message"); *see also Pomykacz v. Borough of West Wildwood*, 438 F. Supp. 2d 504, 513 n.14 (D. N.J. 2006).

To be sure, plaintiff identifies two hypothetical scenarios that allegedly implicate his purported First Amendment right to "convey a message" by publicizing his recordings of police officers. Plaintiff says that he may use recordings of his encounters with the police to (1) defend himself against "false criminal charges" or (2) petition the government to redress grievances arising from "police misconduct." (Compl. at ¶ 48) Both scenarios are contingent—plaintiff not only assumes that he will have another encounter with the police, but also assumes that he will be falsely charged with a crime or experience police misconduct.

This sort of speculation cannot establish standing. Given plaintiff's "unusual" hobby and his allegation that he has been stopped by local police "approximately forty times" (*id.* at ¶¶ 18, 19), he may well be stopped again. But plaintiff does not come close to establishing that he will be falsely charged with a crime or experience police misconduct. Plaintiff, who is on multiple medications, alleges that he was wrongly charged with possession of a controlled substance last year, after certain police officers ignored his prescriptions. (*Id.* at ¶ 40) But even accepting plaintiff's allegations as true, this does establish that plaintiff will be the victim of law enforcement misconduct in the

7

future (thus triggering his alleged need to use the recordings to defend himself or petition the government to redress grievances).

In sum, plaintiff lacks standing because his purported First Amendment injury rests on speculation about future law enforcement misconduct. The Supreme Court's decision in *City of Los Angeles v. Lyons* is helpful on this point. There, the plaintiff was subjected to a choke hold by the Los Angles police, alleged that the police "regularly and routinely" applied choke holds in situations not involving a threat of deadly force, and feared being choked again. 461 U.S. 95, 97-98 (1983). The Court held that the plaintiff lacked standing to seek injunctive relief: "[I]t is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse." *Id.* at 108. By the same token, plaintiff's assumption that he will be falsely charged with a crime or experience police misconduct is mere conjecture, and cannot support standing.

### III. PLAINTIFF'S CLAIM AGAINST DEFENDANT MADIGAN SHOULD BE DISMISSED BECAUSE THE ILLINOIS EAVESDROPPING ACT IS CONSTITUTIONAL.

#### A. Based on Judge Conlon's recent decision in *ACLU v. Alvarez* and binding Seventh Circuit law, plaintiff has no First Amendment right to record police officers.

Finally, plaintiff's First Amendment claim (Count I) should be dismissed because the Act does not infringe on plaintiff's rights. In *American Civil Liberties Union of Illinois ("ACLU") v. Alvarez*, decided just four months ago, Judge Conlon dismissed a

8

similar claim brought by the ACLU. *See* 2011 WL 66030 (N.D. Ill. Jan. 10, 2011).[2] The ACLU failed to cite any Seventh Circuit or Supreme Court authority establishing a First Amendment right to record police officers, and the Seventh Circuit has made clear that "there is nothing in the Constitution which guarantees the right to record a public event." *Id.* at *3. Because the ACLU requested an "unprecedented expansion" of the First Amendment, its claim was dismissed. *Id.* at *4.

Plaintiff's claim tracks the ACLU's, but is even weaker. Exactly like the ACLU, plaintiff challenges the constitutionality of the Act "as applied" to the non-consensual audio recording of police officers when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful." (Compare Compl. at ¶ 2 and *ACLU*, *id.* at *1) But the facts alleged in plaintiff's complaint are less compelling. The ACLU wanted to record a Chicago Police Department program of suspicious container searches on Chicago's lakefront, a protest at the James R. Thompson Center, and an annual anti-war protest. *Id.* at *1. Plaintiff, in contrast, recorded his encounter with police during a traffic stop, and also desires to record his frequent encounters with police when he is "outside late at night by himself," lurking around the woods. (Compl. at ¶¶ 16-20)

Plaintiff intends to record police officers, not from afar, but in one-on-one situations that clearly implicate safety considerations. Traffic stops are "especially fraught with danger to police officers," and the risk of harm requires officers to "exercise unquestioned command of the situation" (something they cannot do when the subject is

---

[2] To be precise, the Court dismissed the lawsuit for lack of standing because the ACLU had not alleged a legally cognizable First Amendment injury, and then denied the ACLU's motion to amend its complaint because amendment would be "futile." *Id.* at *1, 4.

9

focused on operating a tape recorder). *Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (recognizing "the inordinate risk confronting an officer as he approaches a person seated in an automobile"). And, needless to say, safety considerations are paramount when a police officer questions someone who is standing just feet away from him, late at night, and in the woods, especially when that person is wielding an object (a tape recorder) that could easily be mistaken for a gun or other weapon.

Plaintiff's "as applied" First Amendment claim has no merit and should be dismissed. The Seventh Circuit has made clear that "there is nothing in the Constitution which guarantees the right to record a public event." *Potts v. City of Lafayette, Indiana*, 121 F.3d 1106, 1111 (7th Cir. 1997). In *Potts*, the Court held that the plaintiff had no First Amendment right to record a Ku Klux Klan rally: tape recorders were not permitted at the event for safety reasons, the restriction was not content-based, and the plaintiff had ample alternative channels for communicating his message. *Id.* at 1111-1112. In this case, similar considerations warrant dismissal. Plaintiff desires to record police officers in situations where doing so would compromise their ability to do their job safely. He is not being punished based on the content of his message (the Act applies to anyone who wishes to record the police, regardless of their message), and he is not precluded from speaking or writing about his encounters with the police.

### B. Courts in other jurisdictions have not recognized an unfettered right to record police officers.

No court has announced an unlimited First Amendment right to record police officers. In *Jones v. Gaydula*, the court noted that "there is no First Amendment right to tape record the statements of an unwilling utterant." 1989 WL 156343, at *2 (E.D. Pa.

10

Dec. 22, 1989). And the context of qualified immunity, courts have consistently held that there is no "clearly established" right to record police officers. *See, e.g.*, *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010); *Matheny v. County of Allegheny Pennsylvania*, 2010 WL 1007859, at *6 (W.D. Pa. Mar. 16, 2010); *Gravolet v. Tassin*, 2009 WL 1565864, at *4 (E.D. La. Jun. 2, 2009).

One Court of Appeals, in the Eleventh Circuit, has found a First Amendment right to record police officers "subject to reasonable time, place, and manner restrictions." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *see also Robinson v. Fetterman*, 378 F. Supp. 2d 534, 538-41 (E.D. Pa. 2005) (holding that the plaintiff had a right to record Pennsylvania state troopers, from a distance of approximately 30 feet, as they conducted truck inspections). But even this (obviously non-controlling) decision does not help plaintiff, because he desires to record police officers in situations where safety considerations militate against it. *See Kelly*, 622 F.3d at 262-63 (refusing to find a First Amendment right to record police officers during traffic stops, which are "inherently dangerous").

### C. Permitting the recording of police officers could comprise their performance.

Not only is dismissal required under the law, but it makes good sense from a policy standpoint. Police officers who fear that what they say in the presence of a few people may be recorded and disseminated to potentially millions of people may adjust their conduct in ways that compromise their performance. *Cf. United States v. Kerley*, 753 F.3d 617, 622 (7th Cir. 1985) (upholding ban on cameras in the courtroom; "the knowledge of being televised might cause the judge, jurors, or witnesses to be

11

distracted—whether by embarrassment, self-consciousness, anxiety or desire to 'star'"). Nothing in the First Amendment requires this result.

## CONCLUSION

For the foregoing reasons, plaintiff's claim against defendant Madigan (Count I) should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of jurisdiction, and 12(b)(6), for failure to state a claim.

Dated: May 12, 2011

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

*/s/ Michael T. Dierkes*
Michael T. Dierkes
Office of the Illinois Attorney General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3000

Counsel for Defendant Madigan

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 12, 2011, he caused copies of the foregoing **Defendant Lisa Madigan's Memorandum in Support of Her Motion to Dismiss** to be served on all registered counsel via the Northern District of Illinois Electronic Filing System.

*/s/ Michael T. Dierkes*
Michael T. Dierkes