IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS FROBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The VILLAGE OF LINDENHURST, a municipal corporation, Lindenhurst Police officers RALPH H. GOAR, JOHN E. MARS, and JOHN F. FISHER, Lake County State's Attorney MICHAEL J. WALLER, and Illinois Attorney General LISA MADIGAN, | ) ) ) ) ) ) ) ) ) | No. 11 C 1722<br><br>Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In August 2010, Plaintiff Louis Frobe was driving to a movie when a Village of Lindenhurst police officer pulled him over for alleged speeding. Police withdrew the speeding charge, but jailed Frobe on suspicion of violating the Illinois Eavesdropping Act, 720 ILCS 5/14 ("IEA"); then, after finding prescription medications in a search of Frobe's automobile, the police added a charge of possession of controlled substances. The Lake County Prosecutor's Office later dismissed the controlled substance charges and never filed eavesdropping charges.

Though Frobe denies speeding and possessing a controlled substance, he admits to "eavesdropping" as defined in IEA. On March 11, 2011, Frobe filed this lawsuit against State's Attorney of Lake County Michael J. Waller ("State's Attorney"), Illinois Attorney General Lisa Madigan ("Attorney General"), the Village of Lindenhurst ("Defendant Village") and police officers Ralph H. Goar, John E. Mars, and John H. Fisher ("Defendant Officers"). In Count I, Frobe seeks a declaratory judgment and injunction against enforcement of the IEA; because the State's Attorney and Attorney General have announced that they will no longer enforce the IEA in circumstances such as those here, this court previously dismissed that count as moot. *Frobe*

*v. Vill. of Lindenhurst*, No. 11 C 1722, 2013 WL 5433512, at *1 (N.D. Ill. Sept. 30, 2013). In Counts II through VI, Frobe brings false arrest, unlawful search, conspiracy, and malicious prosecution claims against the Defendant Officers, and a *Monell* policy claim against Defendant Village.

Defendant Officers and the Village (collectively, "Defendants"), now move, pursuant to FED. R. CIV. P. 12(b)(6), to dismiss Counts II through VI for failure to state a claim for relief. Defendants argue that the existence of probable cause to arrest Frobe for eavesdropping defeats Counts II through VI. In the alternative, Defendants argue that they enjoy qualified immunity from liability on any of Frobe's claims. Plaintiff contends that the existence of probable cause on the eavesdropping charges does not defeat his claims. For the reasons explained below, Defendants' motion to dismiss Counts II through VI is granted in part and denied in part.

## **FACTUAL BACKGROUND**

For purposes of these motions, the court presumes the truth of Plaintiff's allegations. Plaintiff Louis Frobe and his wife own a home in Lake Villa, Illinois. (Compl. ¶ 19.) Chronic pain and associated prescribed medications interfere with Plaintiff's ability to sleep, and when he is unable to sleep at night, Frobe often passes the time by going to the movies or watching nocturnal animals. (*Id.* ¶ 17.) While he is engaged in these activities, out at night by himself, Plaintiff alleges, he has had frequent and often unpleasant encounters with local police. (*Id.* ¶ 18.) Plaintiff estimates that, since his move to Lake Villa,[1] local police and have stopped and questioned him approximately forty times. (*Id.* ¶ 19.)

On one such occasion in April 2010, Plaintiff was in the woods at night when local police officers stopped him. (*Id.* ¶ 20.) Skeptical of his account that he was out observing animals, the police interrogated him and searched his vehicle. (*Id.*) They found an unlabeled bottle of pills and charged Plaintiff with possession of a controlled substance; once he presented proof of his prescription in court, the charges were dismissed. (*Id.*)

---

[1] The record does not indicate when Plaintiff moved to Lake Villa.

Because of this arrest and other encounters with local police, Plaintiff placed his medications and paper copies of his prescription, together with his wallet and driver's license, inside a waist pack, which he wore or carried with him at all times. (*Id.* ¶ 35.) In addition, Plaintiff purchased a video camera so that he could record his encounters with police and collect evidence of any unlawful arrests or other unconstitutional conduct. (*Id.* ¶ 26.)

On August 15, 2010, Plaintiff was driving alone to a late movie. (*Id.* ¶ 21.) His waist pack sat on the front passenger seat with his medication, paper copies of his prescriptions, his driver's license, and wallet inside. (*Id.* ¶ 35.) At approximately 10:30 p.m., Defendant Officer Goar pulled Plaintiff over on Grand Avenue in Lindenhurst, Illinois, approached Plaintiff's car, and told Frobe he had pulled him over for speeding. (*Id.* ¶¶ 23, 25.) When Officer Goar returned to his squad car with Plaintiff's driver's license, Frobe activated his video camera. (*Id.* ¶ 27.) Frobe alleges that he activated the camera to record the stop because he believed Officer Goar was incorrect about the speed limit and because he wanted to use the video as a defense against any unlawful traffic citation. (*Id.* ¶ 27.)

Officer Goar returned to Plaintiff's car and advised Plaintiff that he would not ticket him for speeding. (*Id.* ¶ 28.) While speaking to Plaintiff, Officer Goar observed the video camera and asked Plaintiff whether it was recording their conversation. (*Id.* ¶ 29.) When Frobe admitted that it was, Goar ordered Frobe from the vehicle and arrested him on a felony charge of eavesdropping in violation of the Illinois Eavesdropping Act. (*Id.* ¶¶ 29–31.) That Act provides that a person eavesdrops when he or she knowingly and intentionally audio records "all or any part of any conversation" without the consent of all of the parties to that conversation. 720 ILCS 5/14-2(a)(1). The IEA defines the act of eavesdropping on a police officer "while in the performance of his or her duties" as a Class 1 felony. 720 ILCS 5/14-4(b).

Officer Goar handcuffed Frobe, searched him, and placed him in the back of a squad car. (Compl. ¶ 32.) At some point after the arrest, Plaintiff alleges, Defendant Officer Mars arrived at the scene, and Defendants Goar and Mars searched Frobe's car. (*Id.* ¶¶ 33–34.)

According to Plaintiff, Defendants Goar and Mars searched his waist pack, removed its contents, confiscated his prescription medications, left his paper prescriptions on the floor of the car, and had the car towed. (*Id.* ¶ 34–36.) Defendants Goar and Mars then drove Frobe to the Lindenhurst Police Department and placed him in an interrogation room. (*Id.* ¶¶ 37–38.)

The complaint alleges that Defendant Fisher joined Defendants Goar and Mars at the police department, and the three police officers discussed which charges should be lodged against Frobe. (*Id.* ¶ 38.) Officers Fisher, Goar, and Mars allegedly contacted the Lake County Prosecutor's Office, and personnel in that office informed them that any decision on felony eavesdropping charges would have to wait until the next day. (*Id.* ¶ 39.) Then, according to Plaintiff, the Officers decided to pretend they had never seen the written prescriptions that Goar and Mars had removed from Frobe's waist pack, and they charged Frobe with the felony offense of possession of a controlled substance. (*Id.* ¶ 40.)

Frobe spent the night in jail without his medications. The following day, he posted $25,000 bond and was released from custody, subject to curfew and drug testing conditions. (*Id.* ¶¶ 41–43.) Plaintiff hired a criminal defense attorney to defend himself against the controlled substance charge. (*Id.* ¶ 44.) The Lake County Prosecutor's Office never filed eavesdropping charges (*id.* ¶ 39), and later dismissed the controlled substance charge. (*Id.* ¶ 45.)

In the years since Frobe's August 2010 arrest, this court and at least three state courts have held the IEA unconstitutional as applied in circumstances similar to Frobe's. *ACLU v. Alvarez*, No. 10 C 5235, 2012 WL 6680341, at *3 (N.D. Ill. Dec. 18, 2012). And three state courts held the law unconstitutional in these circumstances. *People v. Allison*, No. 2009-CF-50 (Crawford County); *People v. Drew*, No. 10 CR 0046 (Cook County); *People v. Melongo*, No. 10 CR 8092 (Cook County). Until those cases were decided, Frobe alleges, police and prosecutors did charge other individuals with eavesdropping violations for audio recording police officers. (Compl. ¶ 46.)

**DISCUSSION**

As noted, Frobe has charged the Defendant Officers and the Village with false arrest (Count II), unlawful search (Count III), conspiracy (Count IV), and malicious prosecution (Count VI). In Count V, Plaintiff seeks to impose liability on the Village under the *Monell* doctrine. Defendants Officers and Defendant Village ask the court to dismiss Counts II through VI of Plaintiff's Complaint for failure to state a claim for relief. FED. R. CIV. P. 12(b)(6).

In deciding a 12(b)(6) motion, the court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). The court accepts factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286 (1986), nor is the court obligated "to accept as true . . . unsupported conclusions of fact." *Hickey v. O'Bannon,* 287 F.3d 656, 658 (7th Cir. 2002). The complaint must "plausibly suggest that the plaintiff has a right to relief . . . ." *EEOC v. Concentra Health Servs, Inc.,* 496 F.3d 773, 776–77 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). If the plaintiff himself alleges facts that demonstrate he has no claim, the court will dismiss the complaint. *McCready v. eBay, Inc.,* 453 F.3d 882, 888 (7th Cir. 2006).

For the reasons explained below, Defendants' motion is granted with respect to Counts III and V, and is otherwise denied.

**I.    Count II: § 1983 False Arrest**

Frobe's false arrest claim, brought pursuant to 42 U.S.C. § 1983 ("§ 1983"), challenges the Lindenhurst officers' conduct at three distinct points in the August 2010 encounter: (1) the traffic stop (*Id.* ¶ 23); (2) the arrest for eavesdropping (*Id.* ¶ 31); and (3) the detention on a controlled substance charge. (*Id.* ¶ 40.) At each of these points, Frobe alleges, Defendants violated his Fourth Amendment rights by arresting him without a warrant, probable cause, or any other legal justification. (*Id.* ¶ 59.) He contends that all three officers are liable because

5

"[e]ach Defendant Officer had a reasonable opportunity to intervene to prevent the misconduct of his fellow officers, but failed to do so." (*Id.* ¶ 60.) Defendants move to dismiss this claim on the ground that, for each arrest, the allegations in the Complaint demonstrate that Defendant Officers had probable cause.

Probable cause constitutes an "absolute defense" to any § 1983 claim for wrongful arrest, and exists "if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2013) (internal quotation omitted). "[A]lthough it requires something more than a hunch, probable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). "[O]ur focus is on what the officer knew at the time of the arrest . . . ." *Id.* at 714 (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). The court examines the allegations concerning each of the three incidents at issue.

### A. Traffic Stop

Frobe alleges that Officer Goar's reason for pulling him over was speeding. Any challenge to the traffic stop must be dismissed, Defendants urge, because "Frobe has not denied committing the traffic offense for which he was stopped." (Lindenhurst Reply [112] at 4.) The court disagrees; though the complaint could have been more explicit on that issue, it can be read as a denial that Frobe was speeding. Frobe alleges that Defendant Goar stopped him for speeding, but that Frobe believed "Officer Goar to be incorrect about the posted speed limit." (Compl. ¶¶ 25, 27.) Frobe allegedly "activated his video camera in an attempt to record the area of the stop so that he could use this video evidence in [h]is own defense against what he believed to be an unlawful traffic citation." (*Id.* ¶ 27.) Construing these allegations in the light

6

most favorable to Plaintiff, the court concludes he has adequately denied that he was speeding when Officer Goar pulled him over.

A brief detention during an auto stop, "even if only for a short period of time and for a limited purpose, constitutes the seizure of a person" for purposes of the Fourth Amendment. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 456 (7th Cir. 2010). That brief detention is lawful if the police have probable cause to believe that a traffic violation has occurred. *Id.* at 456 (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). "The probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Plaintiff's allegations satisfy the court that he has alleged a stop without probable cause. *Cf. Hughes v. City of Chicago*, 673 F.Supp.2d 641, 646 (N.D. Ill. 2009) ("Defendants concede that the facts . . . allow [plaintiff] to survive summary judgment on his claim that he was unlawfully seized when the officers stopped the vehicle he was driving for alleged traffic violations, as [plaintiff] denies he committed any traffic offense.")

Plaintiff appears to believe that if the stop was unlawful, any subsequent detention is constitutionally problematic, as well. At least some case law suggests, to the contrary, that probable cause for an arrest may be based on evidence uncovered in the course of what might otherwise be an illegal stop or search. *See Williams v. Carroll*, No. 08 C 4169, 2010 WL 5463362, *4 (N.D. Ill. Dec. 29, 2010) (observing that this principle has neither been expressly adopted or challenged by the Seventh Circuit, though it has been relied upon in numerous district court opinions); *see also Paige v. City of Fort Wayne*, No. 09 C 143, 2010 WL 3522526, *7 (N.D. Ill Sept. 2, 2010); *Brinson v. Syas*, 735 F. Supp. 2d 844, 852 (N.D. Ill. 2010); *Blackwell v. Kalinowski*, No. 08 C 7257, 2009 WL 1702992, *3 (N.D. Ill. June 18, 2009); *Cannon v. Christopher*, No. 06 C 267, 2007 WL 2609893, *3–*5 (N.D. Ind. Sept. 6, 2007); *Bradshaw v. Mazurski*, No 03 C 2074, 2004 WL 170337, *6 (N.D. Ill. Jan. 13, 2004). Thus, even though

Plaintiff has adequately alleged that the initial traffic stop violated his constitutional rights, the court must nonetheless address his other false arrest arguments separately.

## B. Eavesdropping

After questioning Frobe concerning the camera, Officer Goar arrested him for felony eavesdropping in violation of the Illinois Eavesdropping Act. (Lindenhurst Mem. [73-2] at 3.) Plaintiff concedes that he recorded his conversation with Defendant Goar and that, "by its plain terms, [the IEA] authorizes a police officer to arrest persons who, without the officer's consent, audio record the officer performing his public duties . . . ." (Compl. ¶ 13.) Frobe nevertheless insists that his challenge to the eavesdropping arrest survives because (1) the IEA was "grossly unconstitutional" (Pl.'s Resp. [88] at 13); and (2) at the time of the arrest, Frobe had two valid defenses to the eavesdropping charge. (*Id.* at 7.)

As Frobe sees things, at the time of his arrest, "[t]he [IEA] was so obviously unconstitutional as applied to [his] arrest, that it simply cannot provide probable cause to arrest him." (Compl. ¶ 13.) Under the circumstances here, he contends, "[m]ost people of reasonable prudence would not only doubt the existence of probable cause . . . , but would find any law that allowed such an arrest to be manifestly unfair and irrational." (*Id.* ¶ 13.) Frobe relies on *dictum* from the Supreme Court which suggests that, although police officers are required to enforce the laws on the books, an arrest might not be justified if it based on a statute that is "grossly and flagrantly" unconstitutional: "Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

Frobe believes that the IEA as applied fits into this "possible exception" because it was so obviously unconstitutional that any reasonable person would have understood that the arrest was unlawful. But as Defendant Officers observe, the "Complaint does not cite any cases

8

calling the constitutionality of the [IEA] into question prior to the arrest—and, in fact, cites several cases for the proposition that the [IEA] had been successfully enforced against individuals in like circumstances." (Lindenhurst Mem. at 7 (citing Compl. ¶ 46).) Plaintiff cites no authority for the proposition that a law that had been upheld in similar circumstances is so "grossly unconstitutional" that arrests for violations of that law are themselves unlawful. Plaintiff's own allegations concerning other successful efforts to enforce the IEA defeats his argument that persons of "reasonable prudence" would recognize that the Act is unconstitutional. At a minimum, those allegations establish that Defendants are entitled to qualified immunity from liability for an arrest on eavesdropping charges.

Plaintiff's alternative challenge to the IEA arrest is that he had two valid defenses to eavesdropping, which should have defeated probable cause: he contends, first, that Officer Goar had given implied consent to his recording activities; and second, that Frobe had a good faith belief that Officer Goar had committed or was about to commit a criminal offense against him. (Pl.'s Resp. at 7.) The court is uncertain that the facts alleged in the complaint are consistent with those defenses. Even if they were, however, as Defendants contend (Lindenhurst Reply at 5), the existence of a potential defense is irrelevant to the probable cause analysis. In *Phillips v. Allen,* 668 F.3d 912, 914 (7th Cir. 2012), a plaintiff filed a suit under § 1983 alleging that police arrested him without probable cause for robbery and attempted murder. Plaintiff contended that "police should not have arrested him before his mother had a chance to show them" work records that established an alibi, but the Seventh Circuit was unmoved by that argument. "Probable cause is established by a reasonable belief that a person committed a crime. Police are entitled to leave to the criminal process the full examination of potential defenses." *Id.* (internal citations omitted).

Similarly, in *Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 575 (7th Cir. 2009), a plaintiff who erased data from his employer's computer system was charged with violating an Illinois law that prohibits tampering with computer files. When a witness failed to appear at the preliminary

hearing, the charges were dismissed, and the prosecutor dropped the matter. Plaintiff then sued his employer for malicious prosecution, contending, in part, that there was no probable cause for the arrest because plaintiff was expected and authorized to delete data as part of his job responsibilities. *Id.* at 575–77. That fact did not defeat probable cause, the court concluded: "A person's ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial." *Id.* Thus, even if Frobe's defenses were valid, they do not negate probable cause for Officer Goar's arrest of Frobe pursuant to the IEA. Plaintiff Frobe's claims arising out of the IEA are dismissed.

### C. Controlled Substance Charge

Even if Defendants did not violate his rights by charging him with eavesdropping, Frobe argues, there was no probable cause for the charge of possession of a controlled substance. In Defendants' estimation, there is no need for the court to consider this argument: "[A]n arrest [does not violate] the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010) (citing *Devenpeck,* 543 U.S. at 153–56). The question of whether there was probable cause to arrest Frobe on a controlled substance charge is, according to Defendants, "squarely controlled by *Devenpeck*"; that is, probable cause for the eavesdropping arrest extends to provide a legal basis for Frobe's continued detention on the controlled substances charge. (Lindenhurst Reply at 6, 7.)

In *Devenpeck*, officers suspected the plaintiff of impersonating a police officer. They pulled him over and, when they discovered he was recording their conversation, they arrested him for violating the Washington Privacy Act. *Devenpeck*, 543 U.S. at 149. When that charge was later dismissed, plaintiff sued the officers, challenging his arrest as a violation of the Fourth Amendment. The Ninth Circuit ruled in the plaintiff's favor, concluding that his behavior did not

10

violate the Washington Privacy Act, nor did the officer have a basis for arresting him on any other closely related offense. *Id.* at 152. But that is not the test, the Supreme Court held: despite the lack of probable cause for arresting plaintiff under the Washington Privacy Act, the arrest was lawful so long as "the facts known to the arresting officers give probable cause to arrest" on another charge, whether or not that other charge is related to the stated reason for detaining the plaintiff. *Id.* at 154; *see also Fox*, 600 F.3d at 837.

Attempting to distinguish *Devenpeck*, Frobe emphasizes that in his case, the State's Attorney delayed the decision of whether to file eavesdropping charges. As a result of that delay, he contends, probable cause for the eavesdropping arrest expired, and the Defendant Officers lacked probable cause to detain him on the controlled substance charge. (Pl.'s Resp. at 10.) Assuming that the officers had probable cause for the stated reason for Frobe's arrest (eavesdropping), he argues, they nevertheless lacked probable cause for the subsequent controlled substance charge, on which he was detained. Thus, Plaintiff argues, this case differs from *Devenpeck*, where the officers lacked probable cause for the stated reason for the challenged arrest, but had probable cause to arrest the plaintiff on another charge—that of impersonating a police officer. *Devenpeck* does not control this case, Frobe urges, because the controlled substance charge constitutes a separate and distinct arrest and must be supported by "what the officer knew at the time of [that] arrest." *Abbott*, 705 F.3d at 714 (citing *Devenpeck*, 543 U.S. at 152). In this case, he asserts, at the time Defendant Officers decided not to charge him for eavesdropping, "there was a break in the continuity of probable cause" and "continued detention of Frobe had to be justified with facts which give rise to probable cause to arrest him for [possession of controlled substances]." (Pl.'s Resp. at 11.)

Two of the cases Frobe cites in support of this argument pre-date *Devenpeck*, and neither is precisely analogous to this one. In *BeVier v. Hucal*, the officer lacked "the requisite probable cause to arrest" the plaintiff for child neglect, or any other offense. 806 F.2d 123, 127 (7th Cir. 1986). That "an experienced investigator of child abuse and neglect" later informed the

11

officer that the plaintiff's actions "did not appear to be a violation of the child neglect statute" simply bolstered the conclusion that plaintiff was arrested and detained without probable cause in the first place. *Id.* at 128. As explained earlier, Defendants in this case did have probable cause for the eavesdropping arrest at the time it was made.

Plaintiff also cites *Knowles v. Iowa*, 525 U.S. 113 (1998). There, a police officer stopped a plaintiff for speeding and then, without arresting him, conducted a full search of plaintiff's car, concededly without consent or probable cause. *Id.* at 114–15. When the search uncovered marijuana, the officer arrested and charged plaintiff with a controlled substance offense. In reversing the denial of a motion to suppress the marijuana, the Supreme Court held that the officer's full search of the car, although authorized by Iowa law, violated the Fourth Amendment. *Id.* at 114–15. In this case, Frobe was arrested for eavesdropping—not simply cited for a traffic offense—and cannot challenge the lawfulness of the search.

A third, more recent case provides greater support for Plaintiff's challenge to his detention. In *Goddard v. Kelley*, the plaintiff and his brother yelled obscenities at an umpire during a baseball game at Fenway Park in Boston. 629 F.Supp.2d 115, 120–21 (D. Mass. 2009). The umpire instructed security officials to eject plaintiff and his brother from the stadium, and defendant officer warned plaintiff that if he did not leave, he would be arrested. *Id.* at 121. The brothers did leave the stadium, but a security officer "called the men back into the stadium and asked them for photo identification so that he could include their names in an ejection report." *Id.* at 122. Once they returned, a confrontation developed between the plaintiff's brother and the defendant officer; plaintiff attempted to leave the stadium, but defendant punched him in the throat and plaintiff fell to the pavement. *Id.* Defendant officer again warned plaintiff he would be arrested if he did not leave, and then, when plaintiff explained he was injured, the officer did, in fact, arrest him for trespassing. *Id.* at 122–23.

Plaintiff challenged his arrest in a § 1983 action. Seeking summary judgment, defendants argued that "even if they did not have probable cause to arrest plaintiff for

trespassing, they nonetheless had probable cause to arrest him" for the offenses that led to plaintiff's earlier ejection from Fenway Park. *Id.* at 125. The court commented that, at "first blush," *Devenpeck* appeared to doom plaintiff's claim for false arrest. *Id.* at 126. More careful consideration, however, required the court to deny summary judgment because of the "break in continuity and causation" between the behavior relied upon to support the arrest (plaintiff's disruptive conduct at the game) and the arrest itself. *Id.* at 127. The court recognized two issues that removed the case from "the normal analytical framework." *Id.* at 126. "First, between the time of the initial incident (plaintiff's outburst) and the arrest, the police had made a conscious decision *not* to arrest plaintiff, and let him go." *Id.* at 126 (emphasis in original). This suggested, the court reasoned, that "the police made two decisions: a decision not to make a warrantless arrest based on the incident in the seating area, and a subsequent decision to make a warrantless arrest based on the incident" after plaintiff was called back to the stadium. *Id.* at 126–27. Second, it was the officer himself who punched plaintiff, rendering him immobile, and then arrested him for remaining on the property while he was immobile. *Id.* at 127. "[I]t is objectively unreasonable for a police officer to create the 'probable cause' for an arrest by his own actions." *Id.* The court held that "the validity of the subsequent warrantless arrest should be judged by the objective circumstances under which that separate decision was made." *Id.*

In the case before this court, Defendant Officers argue that, unlike in *Goddard*, "[t]he circumstances here involved one incident" rather than two separate incidents. (Lindenhurst Reply at 7.) The court is less certain. It is true that, as Defendants emphasize, Frobe remained in police custody at all times and the Defendant Officers had probable cause to initiate Plaintiff's arrest for the eavesdropping charge. But Frobe has alleged that the State's Attorney refused to immediately authorize a charge of eavesdropping; it was only then, Frobe claims, that Defendant Officers decided to pretend they had never seen his written prescription and falsely charge him with a controlled substance offense. In concluding that the circumstances in *Goddard* were not controlled by *Devenpeck*, the *Goddard* court noted *Devenpeck's* concern for

13

reliance on "objective constitutional standards in the arrest process." *Goddard*, 639 F. Supp. 2d at 127. As in *Goddard*, Frobe insists, that concern is not implicated by his false arrest claim, which rests on an allegation that Defendant Officers deliberately discarded the written prescription that negated probable cause on the controlled substance charge. (Pl.'s Resp. at 11 (citing *Devenpeck* at 153–55).)

Neither party explicitly answers whether Frobe would have been released that evening, were it not for the controlled substance charge against him. Yet, taken in the light most favorable to Plaintiff, the allegations of the complaint do suggest a scenario that, like *Goddard*, involves two separate detention decisions by law enforcement: although the authorities here did not release Frobe at any point, they are alleged to have conspired to manufacture an alternative means of detainment (i.e., the controlled substance charge) only after the prosecutor's initial decision not to charge Plaintiff under the IEA. Accordingly, the court is satisfied that Plaintiff has alleged facts, similar to those in *Goddard*, that are sufficient to survive this motion to dismiss.

### D. Qualified Immunity

Defendants contend that if the court concludes that Plaintiff's false arrest claim survives this motion, Defendants argue, the court should nevertheless dismiss the complaint on the basis of qualified immunity. (Lindenhurst Mem. at 6). "An officer 'is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed.'" *Thayer*, 705 F.3d at 247 (quoting *Fleming v. Livingston Cnty.,* 674 F.3d 874, 879 (7th Cir. 2012)). Like probable cause, qualified immunity presents an "absolute bar" to a § 1983 false arrest claim. *Id.* at 251. As noted, however, Plaintiff Frobe denies he was speeding, and Defendants have offered no other justification for the initial traffic stop. And no reasonable officer would have believed he was justified in destroying or discarding Plaintiff's written prescription in order to manufacture a basis for a controlled substance charge. The court concludes that Defendant Officers are not entitled to dismissal of Frobe's complaint on the basis of qualified immunity.

14

**II.** **Count III: § 1983 Unlawful Search**

In Count III, Plaintiff alleges that Officers Goar and Mars "searched [Frobe] and his vehicle without a warrant, probable cause, or any legal justification for doing so, in violation" of Frobe's Fourth Amendment rights. (Compl. ¶ 63.) Defendant Officers argue that the existence of probable cause to arrest Frobe for eavesdropping establishes as a matter of law that the subsequent search of Frobe's vehicle did not violate Frobe's Fourth Amendment rights. (Lindenhurst Mem. at 4).

The court agrees. As discussed above, Defendant Officers had probable cause to arrest Frobe for eavesdropping. Whether a search incident to arrest is constitutional "does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Maryland v. King*, 133 S. Ct. 1958, 1971 (2013) (internal quotation omitted). Because Frobe's arrest was lawful, it follows that Plaintiff fails to state a claim for unlawful search under § 1983 (or, again, that the Defendant Officers enjoy qualified immunity for that search). Count III is dismissed.

**IV.** **Count IV: § 1983 Conspiracy**

In Count IV, Plaintiff alleges that Defendant Officers either impliedly or expressly "conspired to falsely arrest and prosecute Plaintiff without probable cause, for a crime he did not commit." (Compl. ¶ 68.) The crime Frobe alleges that he did not commit is possession of a controlled substance. (*Id.* ¶ 45.) When Plaintiff was arrested, he had a waist pack on the passenger seat of his car; that waist pack contained his prescription medications and paper prescriptions. (*Id.* ¶ 35.) When Officers Goar and Mars searched his car, Frobe alleges they removed his paper prescriptions from his waist pack and therefore must have seen them. (*Id.* ¶ 36.) Defendant Officers then tried to secure immediate approval from the Lake County Prosecutor's Office to charge Frobe with felony eavesdropping. (*Id.* ¶ 39.) When that approval was not forthcoming, Frobe alleges, Defendant Officers decided to pretend they never saw

15

Plaintiff's paper prescriptions, and charged Plaintiff with the felony offense of possession of a controlled substance (i.e., his prescription medications). (*Id.* ¶ 40.)

A complaint alleging conspiracy must at least identify (1) the parties to the conspiracy, (2) the general purpose of the conspiracy, and (3) the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). Defendant Officers do not dispute that Plaintiff has met this pleading standard. Further, Defendant officers do not contend that they had independent probable cause to detain and charge Frobe for possession of controlled substances. (Lindenhurst Reply at 6–7.) Instead, Defendant Officers argue that probable cause for the eavesdropping arrest must necessarily defeat Frobe's claim of a § 1983 conspiracy to falsely arrest him for possession of controlled substance charge. (Lindenhurst Mem. at 4) (citing *Thomas v. Drochner*, No. 90 C 139, 1994 WL 803263, at *18 (N.D. Ill. Jan. 14, 1994)).

As discussed earlier, this court agrees that Defendant Officers had probable cause to arrest Frobe for eavesdropping; but Frobe has adequately alleged that his Fourth Amendment rights were violated when Defendant Officers charged him with possession of a controlled substance and detained him on that basis. Should this court (or a jury) ultimately conclude that there was no Fourth Amendment violation, the conspiracy claim will necessarily fail: a finding that Frobe "suffered no constitutional injury . . . forecloses relief on the conspiracy claim." *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) (affirming award of summary judgment to defendants on conspiracy claim after jury "exonerated the defendants of any constitutional violation" for false arrest or malicious prosecution). At this stage, however, the motion to dismiss Plaintiff's § 1983 conspiracy claim (Count IV) is denied.

### V. Count V: § 1983 *Monell*

In Count V, Plaintiff alleges that Defendant Village is liable for his constitutional violations under the *Monell* doctrine because "Defendant Village trains and encourages its officers to arrest citizens such as Plaintiff for recording police officers engaged in their official

duties." (Compl. ¶ 72.) Plaintiff further alleges, the "Defendant Village's express or implied policy or practice resulted in violation of Plaintiff's rights . . . ." (*Id.* ¶ 72.) Defendant Village, on the other hand, argues for dismissal of Count V because its employee's enforcement of a facially valid state law cannot produce *Monell* liability. (Lindenhurst Mem. at 8.)

For the reasons explained earlier, the officers' enforcement of a facially valid state law does not violate the Fourth Amendment. In any event, Plaintiff's real challenge to the eavesdropping arrest is to the validity of the law itself—but the state law is a state law, not municipal policy. A "plaintiff who wants a judgment against [a] municipality under [§ 1983] must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself." *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998). A plaintiff's "failure to allege in its pleadings facts which, if true, would meet the municipal policy requirement is itself a sufficient ground on which to dismiss [plaintiff's] § 1983 claim." *Surplus Storage & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 790 (7th Cir. 1991).

In *Surplus Storage*, a store brought a § 1983 action against a municipality after a municipal police officer, acting in accordance with state law, seized property from the plaintiff without a judicial hearing. *Id.* at 789. The district court dismissed the action against the city, and the Seventh Circuit affirmed, because no municipal policy had caused the violation: state statutes provided authority for the officer to seize such property without a judicial hearing. *Id.* at 789, 793. As in this case, the *Surplus Storage* plaintiff did not "claim that the alleged constitutional violation was caused by" a formal policy or an entrenched practice with the effective force of a formal policy, "that was itself unconstitutional." *Id.* at 791. Instead, the plaintiff argued that the state statutes were unconstitutional and that the municipality could be held liable "for the deprivation of [plaintiff's] property because [the municipality] ha[d] a 'policy' of allowing or instructing its police officers to enforce the challenged statutes." *Id.* at 791.

The court rejected the notion that a policy of enforcing state law could be a basis for *Monell* liability. "It is difficult to imagine a municipal policy more innocuous and constitutionally

permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law." *Id.* at 791. Plaintiff Frobe believes that a policy of training and encouraging officers "to enforce a flagrantly unconstitutional state law could be a basis for *Monell* liability" (Pl.'s Resp. at 17), but, as the court has already concluded, the IEA cannot be characterized as so "flagrantly unconstitutional" that its enforcement violates the Constitution. Moreover, the authorities that Plaintiff himself cites confirm the rationale of *Surplus Storage*: in the cases he cites, the defendant municipality was adhering to its own unconstitutional policy. See *Wessel v. Village of Monee*, No. 04 C 3246, 2010 WL 2523574, at *4 (N.D. Ill. June 14, 2010) (complaint adequately stated a cause of action because it alleged that the "gender-based enforcement" of state statutes was a regular pattern or practice); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986) (county prosecutor's command for police to forcibly enter a property was a final municipal policy that itself violated plaintiff's Fourth Amendment rights).

Count V, the claim against Defendant Village, is dismissed.

## VI. Count VI: Illinois Malicious Prosecution

Finally, the court turns to Plaintiff's Illinois state law claim of malicious prosecution. Plaintiff alleges that "Defendant Officers willfully and wantonly initiated criminal proceedings against [him] without probable cause to believe he had committed a crime." (Compl. ¶ 75.) Frobe's allegations, viewed favorably to him, are that Defendant Officers lacked probable cause to charge him for possession of a controlled substance because they found his written prescriptions in a search of his car, but then wilfully ignored those prescriptions when they charged him with a controlled substances violation. (Compl. ¶¶ 36, 40.) On this motion, Defendant Officers must assume the truth of Frobe's allegations that they were aware of his prescriptions and ignored them in deciding to charge Frobe.

Instead, Defendant Officers argue that the lawful arrest of Frobe for eavesdropping defeats Frobe's malicious prosecution claim. (Lindenhurst Mem. at 4; Lindenhurst Reply at 2.) Such a claim, under Illinois law, requires a showing of (1) commencement of criminal

proceedings by the defendants; (2) termination of that matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages. *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013). Thus, in Illinois, a malicious prosecution claim "requires proof that the defendant commenced or continued a criminal proceeding without probable cause." *Brown v. Vill. of Romeoville*, 407 Fed. App'x. 56, 58 (7th Cir. 2011) (citing *Ross v. Mauro Chevrolet,* 369 Ill.App.3d 794, 801, 861 N.E.2d 313, 319 (1st Dist. 2006)). In a malicious prosecution case, probable cause is defined as "'a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.'" *Id.* at 759 (quoting *Gauger v. Hendle,* 2011 IL App (2d) 100316, 954 N.E.2d 307, 329–30 (2nd Dist. 2011)). "'It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused.'" *Id.* at 759 (quoting *Sang Ken Kim v. City of Chicago,* 368 Ill.App.3d 648, 654, 858 N.E.2d 569, 574 (1st Dist. 2006)). "Malicious prosecution is offense-specific," so the court focuses its attention on the controlled substances charge. *Williams*, 733 F.3d at 759.

Defendants have not addressed that charge with any specificity. Instead, they rely on language from this court's unreported decision in *Thomas v. Drochner*: "Since the existence of probable cause defeats the claim of false arrest and malicious prosecution, a claim for conspiracy on those same facts cannot independently survive . . . ." 1994 WL 803263, at *18. In *Thomas*, the police arrested a plaintiff for child neglect after her eleven-year-old son was shot accidently, ten hours after the last time she had seen him. *Id.* at *3, *6–7, *11–12. The court concluded that defendant was entitled to summary judgment on plaintiff's false arrest and malicious prosecution claims because the undisputed facts established that defendant had probable cause to arrest plaintiff for child neglect. *Id.* at *14.

*Thomas* was a summary judgment ruling on federal claims. This case is before the court on a motion to dismiss Plaintiff Frobe's state law malicious prosecution claim. Plaintiff Frobe

19

has alleged that when Defendant Officers charged him, they deliberately ignored his written prescriptions, and had no other probable cause basis for charging him with possession of controlled substances. Because in Illinois "[m]alicious prosecution is offense-specific," *Williams*, 733 F.3d at 759, probable cause for any separate offense (e.g., eavesdropping) is irrelevant to whether Defendant Officers maliciously prosecuted Frobe in violation of state law. Defendants have not contested Frobe's allegations that Defendant Officers lacked probable cause to charge him with a controlled substance. Frobe has also alleged the remaining necessary elements of malicious prosecution: that he was charged with an offense, that the matter was terminated in his favor, the presence of malice, and resulting damages. Defendants' motion to dismiss Count VI is denied.

## **CONCLUSION**

Defendants' motion [125] is granted in part and denied part. Counts III and V are dismissed. Although the Officers had probable cause to arrest Plaintiff for eavesdropping, his false arrest claim (Count II) otherwise survives. Finally, Defendants' motion to dismiss Counts IV and VI is denied.

ENTER:

Dated: March 10, 2014

REBECCA R. PALLMEYER
United States District Judge